DECISION
The appellant, Jaykee Kromah (Ms. Kromah), appeals the Rhode Island Department of Human Services' (DHS) decision to deny her Family Independence Program (FIP) cash benefits on the grounds that she failed to provide the requisite documentation of state residency. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth below, the Court affirms the DHS's decision.
 Facts and Travel
On September 19, 2005, Ms. Kromah, a pregnant woman with no income, applied for food stamps and FIP benefits from the DHS. On her application, she reported that she lived at 49 Salmon Street, Providence, Rhode Island, and that she received her mail at 56 Melissa Street, Providence, Rhode Island. After receiving Ms. Kromah's application, the DHS sent an investigator from the Front-End Detection Unit (FRED) to assess her eligibility for the programs.
On October 18, 2005, the FRED investigator made an unannounced visit to 49 Salmon Street and found Ms. Kromah present. After interviewing Ms. Kromah on a variety of issues concerning her eligibility for the DHS programs, the investigator wrote a report stating that Ms. Kromah told him she resides in many addresses and does not have *Page 2 
fixed living quarters. FRED Report October 28, 2005 (Report) at 1. As a result, on October 19, 2005, the DHS denied Ms. Kromah the food stamps and FIP benefits on the grounds that she did not fulfill the residency requirements of the programs.
Ms. Kromah then claimed her right to an agency appeal, and a DHS hearing was held on December 13, 2005. At the hearing, a DHS representative stated that Ms. Kromah's food stamps had been reinstated because she met all the eligibility requirements for that program. Tr. of December 13, 2005 at 3. However, he argued that the FIP benefits would not be issued because Ms. Kromah could not document her residency in the manner required for that program. Tr. at 3. The DHS representative then introduced the FRED investigator's report and read it into the record, stating that the DHS's denial was based on the investigator's finding that Ms. Kromah could not verify her address with any documentation. Tr. at 4-5.
Ms. Kromah then testified on her own behalf, arguing that the FRED investigator had misunderstood her situation. Tr. at 6-7. She stated that she did live at 49 Salmon Street with her grandmother and spent every night there. Tr. at 6. However, she also testified that she is not on the lease because her grandmother, who receives assistance from the state, is not authorized to share her apartment with others. Tr. at 7. Ms. Kromah further stated that she spends her days at various friends' houses to avoid compromising her grandmother's housing benefits. Tr. at 7.
Additionally, Ms. Kromah objected to the introduction of the FRED report, arguing that it was inadmissible hearsay evidence because the investigator did not appear at the meeting. Tr. at 3. She argued that, thus, the only proper evidence before the hearing officer was her sworn, uncontroverted testimony that she resided at 49 Salmon *Page 3 
Street with her grandmother. Tr. at 8-10. Ms. Kromah claims that her statements made under oath should constitute sufficient evidence to establish her status as a Rhode Island resident and eligible for FIP benefits. Tr. at 8-10.
On December 15, 2005, the Hearing Officer issued a written decision (Decision) upholding the DHS's denial of FIP benefits to Ms. Kromah. In the Decision, the Hearing Officer outlined the evidence presented by both the DHS and Ms. Kromah, including a summation of the FRED report. The Hearing Officer then outlined three findings of fact:
 "1. The agency notified the appellant by a notice dated October 19, 2005 that her application for FIP benefits was denied because the agency could not determine her whereabouts.
 2. The agency's FRED unit investigated the appellant's reported address and submitted its report at hearing.
 3. The appellant provided testimony that she presently lives at the address she provided the agency and has lived there for more than one year." Decision at 3.
After listing these findings, the Hearing Officer concluded:
 "In order to resolve the discrepancy in testimony between the parties, it would have been proper to have the FRED unit investigator and the appellant's landlord, in this case her grandmother, present at the hearing to provide sworn testimony. The absence of said testimony makes it impossible to determine with certainty the validity of either the FRED investigator's report or the appellant's testimony.
 . . .
 Based on the evidence and testimony presented at the hearing I find that it is reasonable that the agency requires, as is the past practice, verification of residency from the appellant. The appellant's testimony alone, under these circumstances, is not sufficient to establish her residency. Agency policy and practice in its administration of assistance programs requires documentation of relationship, social security [numbers], citizenship, income, bank accounts, deeds, rent receipts, utility receipts, vehicle registration, etc. The Agency would not require *Page 4 
documentation of such items if testimony were sufficient verification." Decision at 3-4.
After receiving notice of this decision, Ms. Kromah filed a timely appeal in this Court.
 Standard of Review
The Court reviews the decisions of the DHS and other administrative agencies pursuant to Section 42-35-15, the Administrative Procedures Act (APA). Section 42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision under the APA, this Court may not substitute its judgment for that of the agency on questions of fact. JohnstonAmbulatory Surgical Assocs., Ltd. V. Nolan, 755 A.2d 799, 805 (R.I. 2000). "The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Id. (quoting Barrington Sch. Comm. V.Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). Furthermore, "legally competent *Page 5 
evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Rhode Island Pub. TelecommunicationsAuth. V. Rhode Island State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). An agency's decision "can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988).
Furthermore, great deference is accorded "to an administrative agency's interpretation of its enabling law, as reflected in its regulations. . . ." In re Advisory Opinion to the Governor, 732 A.2d 55,76 (R.I. 1999); see also Parkway Towers Assoc. v. Godfrey,688 A.2d 1289, 1293 (R.I. 1997) ("deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied."). This deference, however, is not so absolute that it resembles "blind allegiance"; rather, "the true measure of the deference due depends on the persuasive power of the interpretation, given the totality of the attendant circumstances." Citizens Sav. Bank v.Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985).
 Analysis
General Laws Section 40-5.1-2 vests the DHS with the power to administer and implement the Family Independence Program. This government program provides eligible families with "temporary financial assistance . . . while facilitating the entry or re-entry of the adult members of the family into the workplace with necessary supports." *Page 6 
Section 40-5.1-2(a). The DHS is mandated by law to promulgate rules and regulations necessary to carry out the provisions of this statute. Section 40-5.1-36.
In the FIP regulations, the DHS establishes a residency requirement for all applicants: "The Family Independence Program exists primarily to meet the needs of the residents of the state. Therefore, as a factor of eligibility, an individual who is applying or reapplying for benefits or services from Rhode Island must be a resident of the state." DHS Policy Manual Rule (Rule) 0806.35. In order to ensure that this and the other FIP requirements are met, the DHS requires each applicant to "document the information so that the Agency can determine the applicant's eligibility or ineligibility." Rule 0800.10.
In the instant case, the Hearing Officer ruled that Ms. Kromah had not provided the required documentation to establish her residency, and was therefore ineligible for the FIP benefits. Ms. Kromah argues that this decision is incorrect as a matter of law, founding her argument on three grounds: 1) the Hearing Officer misconstrued the applicable state statutes and DHS regulations; 2) the Hearing Officer erred as a matter of law in failing to credit Ms. Kromah's uncontroverted testimony; and 3) the Hearing Officer deprived Kromah of a fair hearing by admitting and considering the FRED report. In response, the DHS contends that the Hearing Officer did not rely on the FRED report when concluding that Ms. Kromah had not verified her state residency, and, furthermore, that the Decision was well-grounded in the applicable law.
Ms. Kromah first argues that the Hearing Officer misconstrued "residency" as it appears in the DHS Rule 0806.35. Both that rule and the governing state statute require applicants to be "a resident of the state" in order to receive FIP benefits. Section 40-5.1-8; DHS Rule 806.35. Ms. Kromah contends that this residency requirement is met as *Page 7 
long as the applicant proves that she is a Rhode Island resident and, therefore, the applicant need not document a fixed street address in order to qualify. Ms. Kromah argues that the DHS denied her application on the grounds that she failed to provide a specific street address in Rhode Island, not because she was not a resident of this state. At the hearing, the DHS representative stated: "This is what we based our . . . denial on. That we really couldn't verify what address she was living at." Tr. At 5. This denial, Ms. Kromah argues, is based on a misapplication of the regulation, and constitutes grounds for reversal.
To support her argument, Ms. Kromah cites the DHS regulation that details the general state residency requirement for all DHS programs: "[A]n individual who is applying or reapplying for benefits or services from Rhode Island must be a resident of the state. Any person living in the state voluntarily with the intent of making the state his/her home, for whatever reason, is a resident of the state." DHS Rule 0106.05. Ms. Kromah contends that, under this definition, she does not need to provide the DHS with a fixed address to prove her residency. She argues that the DHS has never contested that she lives in the state and, therefore, she has met the residency requirement.
Alternatively, the DHS argues that the Decision was based on Ms. Kromah's inability to prove her Rhode Island residency, not on her failure to provide a specific street address. Despite the DHS representative's statement that the denial was made because the agency "couldn't verify what address [Ms. Kromah] was living at," the Hearing Officer upheld the denial on the grounds that Ms. Kromah could offer no poof of her state residency. In the Decision, he states, "[I]t is reasonable that the agency requires, as is the past practice, verification of residency from the appellant. The appellant's *Page 8 
testimony alone, under these circumstances, is not sufficient to establish her residency." Decision at 4. Thus, the Court finds that the Decision was based on the Hearing Officer's determination that the DHS regulations require the applicant to provide proof of residency, which Ms. Kromah was unable to do.
The Court is mindful that it must give deference to an administrative agency's interpretation of its own regulations. See In re AdvisoryOpinion to the Governor, 732 A.2d at 76. An examination of the DHS regulations reveals that the Hearing Officer's conclusion is well-grounded in the applicable rules. Rule 0800.10 states:
 "An application consisting of the Application for Assistance, completed by the applicant and filed with the Agency, is used to apply for assistance and initiates the application process. An interview with the applicant to review these forms is required. The applicant is also required to document the information so that the Agency can determine the applicant's eligibility or ineligibility."
The Hearing Officer's determination that a FIP applicant must present verification of Rhode Island residency is supported by this specific mention of a documentation requirement, and thus, the Hearing Officer did not err as a matter of law in making this conclusion.
Ms. Kromah also argues that the Hearing Officer erred in interpreting the regulations because similar programs, such as Medical Assistance (MA) and food stamps, do not require an applicant to provide the agency with documentation of their address. However, as the DHS argues, the regulations governing these programs have different eligibility requirements than those of the FIP program.
Indeed, Rule 1004.10, which details the residency requirements of the food stamp program, states: "An otherwise eligible household must not be required to reside in a *Page 9 
permanent dwelling or have a fixed mailing address as a condition of eligibility." Similarly, the regulation governing the non-financial requirements for MA notes that "A Rhode Island address on the MA application form is sufficient for this requirement, unless it is inconsistent with other documented information known to DHS." These two regulations differ markedly from the regulation requiring "documentation" of eligibility for the FIP program, and thus, the Court finds that the Decision was neither made upon unlawful procedure nor arbitrary and capricious.
Additionally, Ms. Kromah argues that the Hearing Officer erred as a matter of law by failing to credit her uncontroverted testimony that she resided at 49 Salmon Street. She recognizes that the trier of fact is free to reject a witness' uncontroverted testimony if he or she finds it "plagued by inherent improbabilities or contradictions." Correia v.Norberg, 120 R.I. 793, 800, 391 A.2d 94, 98 (1978). However, Ms. Kromah argues that in situations where no such inherent improbabilities or contradictions exist, the trier of fact is obligated to give weight to the uncontroverted testimony. Here, Ms. Kromah argues, her sworn statement that she lived at 49 Salmon Street was the only evidence properly introduced at the hearing; therefore, she contends that this testimony must control the Hearing Officer's findings.
Ms. Kromah's arguments, however, fail to distinguish between the instant case, where the DHS regulations specifically require the applicant to produce documentation, and the situation inCorreia, where the controlling regulations did not impose any particular document verification requirement. See Correia, 120 R.I. at 799,391 A.2d at 79 ("There is no specific requirement, either in our statutes or in the regulations of the Division of Taxation, that documentary proof is essential in meeting the aforementioned *Page 10 
burden."). Thus, the Court does not find that the Hearing Officer's requiring a documentation of residency beyond the applicant's sworn testimony was in excess of the agency's statutory authority.
Finally, Ms. Kromah argues that the DHS denied her a fair hearing by admitting and considering the FRED report, which she claims is inadmissible hearsay. In response, the DHS argues that there is no hearsay issue because the Decision was not based upon any evidence offered in the report. It has been long held that hearsay is more liberally admitted in an agency hearing than in a jury trial, "reflecting [the] traditional division of function between judge and jury." DePasquale v. Harrington, 599 A.2d 314, 316 (R.I. 1991). In fact, "[m]any of the rules surrounding the exclusion of hearsay in jury trials are meant to prevent juries, uninitiated in the evaluation of evidence, from hearing unreliable or confusing testimony and rendering a verdict based on such evidence." Id. In the instant case, the report was admitted but discounted, evidencing that administrative officers are well-trained to distinguish between reliable and unreliable hearsay evidence. The Hearing Officer stated that the report was not sufficiently reliable to justify resting his Decision on the conclusions contained therein:
 "In order to resolve the discrepancy in testimony between the parties, it would have been proper to have the FRED unit investigator and the appellant's landlord, in this case her grandmother, present at the hearing to provide sworn testimony. The absence of said testimony makes it impossible to determine with certainty the validity of either the FRED investigator's report or the appellant's testimony. Decision at 4.
Noting the lack of sufficient evidence from either party, the Hearing Officer then made a legal determination that the appellant's burden to prove her residency has not been met: *Page 11 
 "The appellant's testimony alone, under these circumstances, is not sufficient to establish her residency. Agency policy and practice in its administration of assistance programs requires documentation of relationship, social security [numbers], citizenship, income, bank accounts, deeds, rent receipts, utility receipts, vehicle registration, etc. The Agency would not require documentation of such items if testimony were sufficient verification." Decision at 4.
It is clear from these statements that the Hearing Officer did not give weight to the FRED report when making his determination that the agency regulations require the applicant to provide documentation of her residency in order to qualify for the program. This conclusion is an interpretation of the DHS regulations and not the resolution of a question of fact. An agency's interpretation of regulations promulgated pursuant to its statutory authority is accorded great deference see Inre Advisory Opinion to the Governor, 732 A.2d at 76, and this Court is satisfied that the Hearing Officer's conclusion on this legal issue comports with the applicable statutes and regulations, and was not affected by error of law.
 Conclusion
After review of the entire record, this Court finds that the Department of Human Services' decision to deny Jaykee Kromah FIP benefits does not constitute an abuse of discretion or an error of law. The Decision does not violate constitutional or statutory provisions; it is supported by the reliable, probative and substantial evidence of record and not clearly erroneous. Furthermore, it is neither arbitrary nor capricious. Substantial rights of the applicant have not been prejudiced. Accordingly, the Court affirms the decision of the Hearing Officer.
 Counsel shall submit the appropriate judgment for entry.